17224. HOBBS <em>v.</em> HOBBS.

The widow and heirs at law of a decedent may enter into a voluntary binding agreement whereby she is to take and receive a stipulated portion of the estate in lieu of her rights as widow, including the provision for a year's support. In order for such agreement to be set aside, it must appear that it was induced by ignorance amounting to accident or mistake, or was procured by fraud or duress. In the instant case the evidence does not disclose on the part of the stepson any acts or conduct whatsoever amounting to duress, or the violation of any trust or confidence growing out of any close or fiduciary relationship. It does not disclose any false and fraudulent representations on his part, calculated to deceive the widow as to the status and condition of the estate or as to her legal rights as such widow; nor does it disclose any actual ignorance on the part of the widow with reference to such matters, taken advantage of by the opposite party, which are plainly and specifically set forth by the terms of the agreement entered into. On the contrary, the agreement as signed by each of the parties thereto, and testified without dispute to have been read to her before its execution, specifically refers to the extinguishment of her claim for year's support; and the terms of the agreement not being within themselves unreasonable or unconscionable, such as might, of and within themselves, suggest or indicate fraud, there is nothing disclosed by the record in the instant case, just as there was nothing in the *Giles* case, 135 *Ga.* 683 (70 S. E. 335), mainly relied upon by defendant in error, to justify in any wise its being set aside as having been obtained through fraud or duress.

Decided July 20, 1926.

Appeal; from Thomas superior court—Judge Knight presiding. February 13, 1926.

*Titus & Dekle,* for plaintiff in error.

*James B. Burch, Eldon L. Joiner,* contra.

Jenkins, P. J. A husband and father died intestate, leaving 50 acres of land of the probable value of $1,000, two acres of land alleged to have been worth $100, and personal property, after

---

Descent and Distribution, 18 C. J. p. 888, n. 92; p. 890, n. 8, 9 New.

deducting an automobile sworn by the widow to be her own property, supposed to have been worth $1478.70. Subsequently to the death of the decedent, the son and the widow, who was the stepmother of the son and a young woman, entered into a written agreement whereby the personal property, including the automobile referred to, valued at $150, was to be divided equally between the widow and her stepson, it being conditioned that the son was to pay the debts of the decedent out of such portion going to him. These debts amounted to $332.04. It was further provided by the agreement that the widow was to have an estate for life, or until she married again, in the 50 acres of land valued at $1,000, and the son was to have the two acres of land alleged to be worth $100. Deeds were signed and delivered in accordance with the terms of such agreement, which was executed by the respective parties thereto going into possession of the property assigned to each, and by the son discharging the debts of the decedent. After such agreement had been made and executed, the widow filed application for a year's support, which was granted, and by the terms of which she was given the entire real estate in fee simple, and an additional sum of $300. A caveat was filed by the son, and on the hearing before the ordinary the award of the appraisers was set aside, but on an appeal to the superior court it was confirmed. A motion for new trial filed by the son was overruled, and exception to this judgment is now taken.

On the trial in the superior court the widow testified that the agreement was signed four days after the death of decedent; that at the request of the son she went with him to Thomasville, first to the clerk of the court, and afterwards to a lawyer, who prepared the agreement; but that she signed without reading the paper, and was unaware of her rights as the widow of the decedent. The record further indicates that the relations between the widow and her stepson were strained. The evidence for the stepson, by the witness to the agreement, was to the effect that the paper was read over to her by the witness prior to its being signed. The evidence of the lawyer who wrote the paper, and who was a witness thereto, was that she said before its being signed that she knew what she was doing. This testimony by the two witnesses to the instrument was not disputed, although the widow did testify that she did not know what the paper was, and that no one ex-

plained to her her rights. The agreement signed by the widow and the stepson specifically and in terms indicates that the agreement purported to be a complete division of the estate, expressly stating that the portion received by the widow thereunder was to be in lieu of all her rights of every sort, including dower and year's support. There was testimony to the effect that the widow had previously stated that "she had rather have the 50 acres of land that her husband left, for her lifetime or until she married again, and one half of the personal property, rather than take one half of all and have to pay any of the debts of the estate," and that after she went in possession under the agreement she then stated that she was satisfied with the settlement. These alleged declarations on her part were, however, disputed by her testimony at the trial. *Judgment reversed. Stephens and Bell, JJ., concur.*