29287. ANDERSON *v.* CALDWELL, administrator.

DECIDED MARCH 6, 1942.

*W. Gordon Mann,* for plaintiff.

*C. D. McCutchen, Hardin & McCamy,* for defendant.

MacINTYRE, J. (After stating the foregoing facts.) It seems to be the settled law of this State that a widow and the heirs at law of a decedent may enter into an agreement, voluntary and binding, whereby she is to take and receive a stipulated portion of

the estate in lieu of any of her rights as a widow, including the provision for a year's support. The agreement could of course be set aside if it were made to appear that it was induced by ignorance of her rights and of the condition of the estate amounting to accident or mistake, or if it were shown that it was procured by fraud or duress. *Giles* v. *Giles,* 135 *Ga.* 683, 684 (70 S. E. 335) ; *Hobbs* v. *Hobbs,* 35 *Ga. App.* 645 (134 S. E. 194). The widow in this case entered into such a contract with the heirs at law of her husband whereby she agreed to receive certain described property and waive "all rights or claims to any dower or year's support from said estate." The legal effect of this agreement was to take certain property of the estate in lieu of her right to dower or year's support. The widow takes the position that the contract was induced by fraud, and that she had no knowledge of her rights or of the condition of the estate, and that therefore the agreement was void. The case was tried on this issue, and the jury returned a verdict in favor of the administrator, and in effect declared the agreement binding and a bar to the widow's claim for a year's support. The evidence authorized this finding.

Under the widow's own testimony it appears that she knew all about the estate of her husband; she attended to his banking, collected money owing him, loaned money for him, and knew of practically all the land he owned and the condition of his estate. Her testimony was in part: "As to whether or not I was thoroughly familiar with Mr. Anderson's estate; well, I knew what money he had in the bank, except one thing he had a little checking account. Yes, I did his banking for him after he got disabled. Lester Caldwell knows that himself and he went a time or two for him. As to whether or not I loaned money for him, I let people have money for him. I would get it. Yes, I knew where his money was at. He had confidence in me. As to whether or not I know how many notes he had, well, I took them out and looked at them. As to whether or not I knew more about Mr. Anderson's estate than anybody else, it should look like I would, but I don't know whether anybody fooled me about what the estate was worth or not. I didn't know all of the land that Mr. Anderson had. I knew part of it. Yes, I was present when the land was sold [by the administrator] and I bid on some of it. . . When I accepted this check from Mr. Caldwell for $400 I didn't say any-

thing about claiming a year's support." It appears from the testimony of other witnesses that the contract which the widow signed was read over to her three different times. The heirs first met with the administrator and Mrs. Anderson at her home for the purpose of discussing the division of the estate, and she told them what she wanted. The administrator made notes of the main points and drew a contract in conformity with them. A week thereafter he took the written contract to the widow's home and handed it to her to read, but because of the fact she did not have her glasses he read it over to her, "word for word, very slowly so she would be sure to understand it; . . and she said it sounded like Mr. Anderson's wishes." Approximately two weeks thereafter the heirs met at Mrs. Anderson's home to sign this agreement. Mr. McCutchen, the lawyer who represented the estate, met with them and he read the contract over twice to all persons concerned. "Wess Hackney told Mrs. Anderson that if she didn't want a year's support or a dower that it wouldn't hurt her to sign it, but if she did want a year's support or a dower, she had better not sign it." All of the parties then signed the agreement. Under this agreement Mrs. Anderson received $200 more than any of the heirs. On several occasions the administrator distributed assets of the estate according to the agreement in question, which the widow each time accepted, and did not on any of these occasions advise him that she was going to repudiate her contract and claim a year's support. Furthermore, when certain of the property was sold at public sale in pursuance of the agreement she was present at the sale and bid thereon. In addition, she received the various other personal properties set out in the agreement above. Relying on this contract the administrator proceeded, and almost completely administered the estate.

The jury were properly instructed as to the issues they were to determine, and were authorized to find that the consideration for the contract was sufficient; that the widow did not sign the contract in ignorance of the condition of the estate, and to further find that she was not defrauded in any manner. The evidence authorized the verdict and the judge did not err in overruling the general grounds of the motion for new trial.

The judge charged the jury in part as follows: "I charge you, gentlemen, that the burden of proof rests upon the applicant, Lula

Whaley Anderson, to satisfy you of the truth of her case." He later charged them: "I charge you, gentlemen, that where appraisers have set apart a year's support to a widow and a caveat thereto has been filed by the administrator of the estate, irrespective of whether the burden of proof rests on the widow or the administrator, the return of the appraisers makes a prima facie case for the widow." The widow contended that the judge erred in so charging, in that it was an erroneous charge as to the burden of proof, because the charge placed the burden on her whereas the law places it on the caveator. "According to *Cheney et al.* v. *Cheney,* 73 *Ga.* 66, the applicant for a year's support is, upon the trial of an appeal in the superior court from a judgment of the ordinary, entitled to open and conclude, where the contest is with the representative of the estate. But according to *Robson* v. *Harris,* 82 *Ga.* 153 (7 S. E. 926), where the contest is with an adverse claimant of the property, the burden of proof is upon the latter, from whence it follows that he is entitled to open and conclude when both parties introduce evidence." *Gunn* v. *Pettygrew,* 93 *Ga.* 327 (2) (20 S. E. 328) ; *Burch* v. *Harrell,* 57 *Ga. App.* 518 (196 S. E. 205). See also *Hill* v. *Hill,* 55 *Ga. App.* 500, 504 (190 S. E. 411). The caveat having been filed by the administrator, the representative of the estate, there is no merit in this ground.

The other grounds of the motion excepting to portions of the charge have been considered and are not meritorious. They are correct statements of law applicable to the facts of this case and no reversible error is disclosed.

*Judgment affirmed.* *Broyles, C. J., and Gardner, J., concur.*